# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

**IEASHIA MASHIA SHELTON**                                                                 **PLAINTIFF**

**V.**                              **CASE NO. 4:25-CV-00296 KGB-JTK**

**SOCIAL SECURITY ADMINISTRATION**                                          **DEFENDANT**

## RECOMMENDED DISPOSITION

**I.   Procedures for filing Objections:**

This Recommended Disposition ("Recommendation") has been sent to United States Chief District Judge Kristine G. Baker. Either party may file written objections to this Recommendation. If objections are filed, they should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within fourteen (14) days of this Recommendation. If no objections are filed, Chief Judge Baker can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

**II.   Introduction:**

Plaintiff, Ieashia Mashia Shelton ("Shelton"), filed an application for Title II disability and disability insurance benefits on October 9, 2020. (Tr. at 213). On the same day, she filed an application for Title XVI supplemental security income. *Id*.

1

In the applications, she alleged that her disability began on September 29, 2018. *Id*. The applications were denied initially and upon reconsideration. *Id*.

After conducting a hearing, an Administrative Law Judge ("ALJ") found that Shelton was not disabled. (Tr. at 213-229). Upon review, the Appeals Council vacated the hearing decision and remanded for further review.[1] (Tr. at 238-240). A second hearing was held on November 14, 2023. (Tr. at 41). By written decision, and ALJ again found that Shelton was not disabled. (Tr. at 41-53). The Appeals Council denied Shelton's request for review of the hearing decision on January 27, 2025. (Tr. at 1-6). The ALJ's decision now stands as the final decision of the Commissioner, and Shelton has requested judicial review. For the reasons stated below, the Court should affirm the decision of the Commissioner.

### III.   The Commissioner's Decision:

Shelton, who was 27 years old on the alleged onset date, meets the insured status requirements of the Social Security Act through September 30, 2026. (Tr. at 44, 51). The ALJ determined that Shelton engaged in substantial gainful activity

---

[1] The Appeals Council instructed the Administration to: (1) ensure that all evidence was properly exhibited; (2) further consider evidence of Shelton's past work; (3) give further consideration to Shelton's residual functional capacity ("RFC"); and (4) further explore vocational testimony, if needed. (Tr. at 238-240). Shelton makes no claim that these instructions were not followed after the remand.

2

after the alleged onset date, in portions of 2019, 2022, and 2023.[2] (Tr. at 44). The ALJ also found that there has been a continuous 12-month period during which Shelton did not engage in substantial gainful activity. *Id.* The ALJ's findings addressed the periods when Shelton did not engage in substantial gainful activity. *Id.*

The ALJ found, at Step Two, that Shelton has the following severe impairments: systemic lupus erythematous, status-post adrenalectomy, migraine headaches, anxiety disorder, depressive disorder, borderline personality disorder, and obesity. *Id.*

The ALJ determined that Shelton did not have an impairment or combination of impairments that met or medically equaled a Listed Impairment.[3] (Tr. at 44-47). Next, the ALJ found that Shelton had the residual functional capacity ("RFC") to perform work at the light exertional level with the following additional limitations: (1) can never climb ladders, ropes, or scaffolds; (2) must avoid concentrated

---

[2] The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g).

[3] See 20 C.F.R. Part 404, Subpart P Appendix 1: "Adult Listing of Impairments."

3

exposure to direct sunlight; (3) is limited to making simple work-related decisions; (4) can maintain concentration, persistence, and pace for simple tasks; (5) can understand, carry out, and remember simple work instructions and procedures; (6) can adapt to changes in the work setting that are simple, predictable, and can be easily explained; and (7) is limited to occasional interaction with co-workers, supervisors, and the public. (Tr. at 47).

The ALJ determined that Shelton was unable to perform any past relevant work. (Tr. at 51-53). Relying upon testimony from a vocational expert ("VE"), the ALJ found that, considering Shelton's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that Shelton could perform. *Id*. Therefore, the ALJ concluded that Shelton was not disabled. *Id*.

### IV.  Discussion:

####   A.  Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477.

B. Shelton's Arguments on Appeal

Shelton contends that the evidence supporting the ALJ's decision to deny benefits is less than substantial. She argues that: (1) the ALJ did not fully consider Shelton's migraine headaches; (2) Shelton met the Listings for a skin condition and mental impairments, contrary to the ALJ's findings; and (3) the ALJ erred in how he evaluated Shelton's subjective complaints.

1. Migraine Headaches

Shelton asserts that her migraine headaches were disabling, and that the ALJ did not properly consider an opinion about her migraines from her provider, Dr. Harold Betton, M.D. (Tr. at 1901-1902). She claims the ALJ should have found the headaches disabling pursuant to Social Security Ruling ("SSR") 19-4p.[4] SSR 19-4p provides that the ALJ shall consider the diagnosis and treatment, observation of a headaches event, laboratory findings, and any acceptable medical source's statements.

The ALJ *did* fully investigate and discuss Shelton's headaches. He found that they were a severe impairment at Step Two, and he evaluated whether they met a Listing at Step Three. (Tr. at 45, 49). The ALJ discussed that Shelton took over-the-

---

[4] Sections 216(i), 223(d), 223(f), 1614(a)(3) and 1614(a)(4) of the Social Security Act; https://www.ssa.gov/OP_Home/rulings/di/01/SSR2019-04-di-01.html.

counter and prescription medication for headaches, but it should be noted that in November 2020, Shelton reported that she was not taking medication for migraines due to her pregnancy. (Tr. at 48). The ALJ recognized Dr. Betton's 2020 opinion form, which listed that Shelton had five to six headaches per week lasting three to four days each (which exceeds the actual hours in a week); the ALJ also noted that Dr. Betton said that the migraines were accompanied by aura, nausea, vomiting, photophobia, and phonophobia. (Tr. at 49, 1901-1902). But Dr. Betton confirmed that Shelton was taking no medication, and he did not place any functional restrictions on Shelton due to headaches. (Tr. at 1901-1902). His opinion merely stated that Shelton was "unemployed." *Id*. The ALJ included a discussion of Dr. Betton's opinion in his analysis. (Tr. at 49).

The ALJ considered that Shelton worked during the relevant time-period and could perform daily activities like socializing, caring for her eight children on her own, driving, shopping, preparing meals, and performing household chores.[5] (Tr. at 101-116, 432-439, 456-463). Apparently, migraines occurring multiple times a week, as Dr. Betton suggested, did not prevent Shelton from being very active. It is also important to note that in disability claims cases, a diagnosis alone does not infer

---

[5] Such daily activities undermine her claims of disability. *Andrews v. Colvin*, 791 F.3d 923, 929 (8th Cir. 2015); *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003).

disability, a functional loss must be present.[6] It is the claimant's burden to show she is disabled.[7]

Considering the evidence as a whole, including Shelton's migraines, the ALJ restricted Shelton to no concentrated exposure to direct sunlight in the RFC, properly accounting for alleged migraines. (Tr. at 47).

### 2. Listings

Shelton next avers that she met a Listing 8.09 for her skin condition, which she alleged presented as boils or lesions.[8] Listing 8.09 addresses skin conditions.[9] To meet the Listing, a claimant must show chronic pain from the condition despite prescribed adherence to treatment for three months and one of the following: (1) an inability to use both upper extremities for fine and gross motor movements; (2) an inability to use one upper extremity for the same and a need for an assistive device for that upper extremity; (3) inability to stand up from a seated position and remain upright; or (4) inability to maintain an upright position while standing or walking.

---

[6] See *Trenary v. Bowen*, 898 F.2d 1361, 1364 (8th Cir. 1990).

[7] *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009).

[8] Shelton erroneously cited to a Child Disability Listing in her brief, but the Commissioner interpreted her argument as pertaining to Listing 8.09, which is the applicable Listing. (Doc. No. 5 at p.8; Doc. No. 7 at pp. 7-8).

[9] 20 C.F.R. Part 404, Subpart P, Appendix 1, § 8.09; https://www.ssa.gov/disability/professionals/bluebook/8.00-Skin-Adult.htm#8_09

20 C.F.R. Part 404, Subpart P, Appendix 1, § 8.09.

Shelton makes no specific argument about how she met this Listing; she just generally states that her recurring boils cause anxiety and pain.[10] (Doc. No. 5, at pp. 4, 8). In her brief, Shelton states that Dr. Betton treated her skin lesions conservatively with medication. *Id*. She did not require surgery or grafting or any other aggressive treatment.[11] The lesions did not prevent Shelton from performing a wide range of daily activities. The ALJ did not find skin lesions to be a severe impairment, and thus, did not proceed to a Step Three analysis. Plaintiff has not shown that the condition was severe or that she met a Listing for skin lesions. The ALJ did not err.

Shelton also contends that she met a Listing 12.04 (Depressive, Bipolar, and related Disorders).[12] The ALJ found anxiety, depression, and borderline personality disorder to be severe impairments.[13] (Tr. at 44). Throughout the opinion, the ALJ

---

[10] Subjective complaints alone, without credible supporting medical evidence, are not sufficient to establish a disabling impairment. *Harris v. Barnhart*, 356 F.3d 926, 930 (8th Cir. 2004).

[11] The need for only conservative treatment contradicts allegations of disabling conditions. *Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993).

[12] 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.04; https://www.ssa.gov/disability/professionals/bluebook/8.00-Skin-Adult.htm#8_09.

[13] Shelton was in therapy for her mental illnesses, and she did admit for inpatient psychiatric care for a short time in December 2021 for suicidal ideation. (Tr. at 50). But she also worked during the relevant time-period, and she could perform daily living activities. After Shelton's hospital stay, she treated conservatively with talk therapy. (Tr. at 3718-4000). In August 2022, she told

discussed the signs and symptoms Shelton experienced, but he also specifically addressed whether she met Listing 12.04 at Step Three. (Tr. at 45-46). He addressed the four functional areas considered in Listing 12.04 and found: (1) no limitation in understanding, remembering, or applying information; (2) moderate limitation in interacting with others; (3) mild limitation in concentrating, persisting, and maintaining pace; and (4) moderate limitation in adapting or managing oneself. *Id*. The ALJ gave clear reasons for these findings in his Step Three discussion. *Id*.

To meet Listing 12.04, the claimant must show two marked or one extreme limitation in those four functional areas.[14] Shelton cannot point to any specific evidence showing that she met these criteria, nor explain how the ALJ could have erred in his findings. She also did not show that she met the next Listing 12.04 criteria: depression lasting two years that was serious and persistent enough to result in decompensation or other inability to function without a highly supportive living environment. *Id*. Shelton did not live in a highly supportive living environment;

---

her therapist that her depression was not as severe as in the past. (Tr. at 3749). She said she felt more stable and stress-tolerant. (Tr. at 3759). She also told her therapist she could not use coping skills because she was the mother of six children. (Tr. at 3749). But she was able to care for them on her own. In June 2023, Shelton told her therapist she was seeing things more positively and getting more done around the house. (Tr. at 3755-3756). Improvement with conservative treatment tends to undermine claims of disability. See *Lochner v. Sullivan*, 968, F.2d 725, 728 (8th Cir. 1992).

[14] 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.04.

rather, she cared for her eight children on her own. Moreover, in Shelton's brief, she states that mental health therapy diminished the signs and symptoms of her mental disorder. (Doc. No. 5 at p. 15). A claimant must show she met all criteria to meet a Listing, and Shelton has not shown that; the record reflects that Shelton had a positive response to conservative depression treatment. The ALJ did not err with respect to Listing 12.04.

### 3. Subjective complaints

Finally, Shelton asserts that the ALJ did not properly consider her subjective complaints.[15] The ALJ discussed the nature of Shelton's pain from lupus, and the fact that it was managed conservatively. (Tr. at 47-50). He discussed her medications and response to treatment. *Id*. He discussed her work history and her activities of daily living, which do not suggest that she cannot perform some work activity. *Id*. No provider placed functional restrictions on Shelton. The ALJ properly found that Shelton's subjective complaints were not entirely consistent with the record as a whole. (Tr. at 48). This assessment was well-supported.

---

[15] When evaluating a claimant's subjective complaints of pain, the ALJ must consider objective medical evidence, the claimant's work history, and other evidence relating to (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the claimant's functional restrictions. See *Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019). "An ALJ need not explicitly discuss each factor," and he may "decline to credit a claimant's subjective complaints if the evidence as a whole is inconsistent with the claimant's testimony." *Id*. (internal citations omitted).

## V. **Conclusion:**

There is substantial evidence to support the Commissioner's decision to deny benefits. The ALJ properly considered Shelton's migraines, skin lesions, and depression, as well as Shelton's subjective complaints. The finding that Shelton was not disabled within the meaning of the Social Security Act, therefore, should be affirmed. The case should be dismissed, with prejudice.

IT IS SO ORDERED this 14th day of August, 2025.

_____
UNITED STATES MAGISTRATE JUDGE